**Stephen PERRY, Executor for the Estate of Harold L. Perry**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al.**

**Nos. 3–91–1061, 3–91–1069.**

United States District Court,
M.D. Tennessee,
Nashville Division.

April 15, 1994.

Sabin R. Thompson, Nashville, TN, for plaintiff.

Michael L. Roden, Office of U.S. Atty., Nashville, TN, for defendant Blue Cross/Blue Shield.

Michael L. Roden, Office of U.S. Atty., Nashville, TN, John Hokkanen, Office of Gen. Counsel, Dept. of Health and Human Services, Atlanta, GA, for defendants Dept. of Health and Human Services, Louis W. Sullivan, M.D.

John J. Heflin, III, Rickey, Bourland, Heflin & Alvarez, Memphis, TN, Patrice Smiley Andrews, Metropolitan Life Ins. Co., Law Dept., New York City, for defendant Metropolitan Life Ins. Co.

Lee Webb Campbell, II, Elizabeth B. Thompson, Sherrard & Roe, Nashville, TN, Randall A. Constantine, Elrod & Thompson, Atlanta, GA, for defendant United Food and Commercial Workers Health and Welfare Trust Fund.

Barbara Bennett, Cason E. Moreland, Nashville, TN, for defendant Vanderbilt University Medical Center.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the Report and Recommendation (entered July 12, 1993; Docket Entry No. 71) of the Magistrate Judge, as well as the objections of the plaintiff (filed July 26, 1993; Docket Entry No. 76), defendant Metropolitan Life Insurance Company (MetLife) (filed August 3, 1993; Docket Entry No. 77), and defendant United Food and Commercial Workers Health and Welfare Fund (United Fund) (filed August 6, 1993; Docket Entry No. 79). The Court hereby makes a *de novo* determination of the case upon the record, pursuant to the Federal Rules of Civil Procedure 72(b), 28 U.S.C. § 636(b)(1)(B), and Rule 506 of the Local Rules Governing Duties of and Proceedings Before Magistrates.

In his Report and Recommendation, the Magistrate Judge recommended the following: (1) denying MetLife's motion (filed January 15, 1993; Docket Entry No. 39) for summary judgment; (2) granting United Fund's motion (filed February 26, 1993; Docket Entry No. 50) for summary judgment to the extent that it is not a primary payer of the plaintiff's claim under the Medicare Act; and (3) granting the plaintiff's motion (filed March 5, 1993; Docket Entry No. 54) for summary judgment as to MetLife's obligation as the primary payer under 42 U.S.C. § 1395y(b)(1)(B).[1]

For the reasons set forth below, the Court shall reject the Report and Recommendation.

---

1. The Magistrate Judge also recommended that the action be stayed concerning MetLife's actual obligation to pay the claim for medical expenses on the part of Vanderbilt University Medical Center, pending resolution of Vanderbilt's claim in the state probate court action. This state court action has been resolved, *see* Docket Entry No. 87, attachments 1 and 2, thereby rendering this issue moot.

The plaintiff's objection[2] (Docket Entry No. 76) and the objections (Docket Entry No. 77) of defendant MetLife[3] to the Report and Recommendation shall be sustained. The objection (Docket Entry No. 79) of United Food,[4] as well as its motion (filed April 2, 1993; Docket Entry No. 62) to strike,[5] shall be dismissed as moot.

## I.

The plaintiff in this action, Stephen Perry, executor for the estate of Harold L. Perry, originally filed this action in state court against the defendants, MetLife, United Fund, Blue Cross and Blue Shield of Tennessee, and Vanderbilt University Medical Center (VUMC), for breach of contract and bad faith insurance practices. The cause of action against Blue Cross and Blue Shield of Tennessee was removed to this Court.[6] Louis Sullivan, Secretary of Health and Human Services, asserted his position as the real party in interest, since Blue Cross and Blue Shield of Tennessee simply operated as his agent in administering payment of medical benefits under Medicare, and was substituted as defendant. *See* order (Docket Entry No. 4) entered December 30, 1991. Sullivan also asserted the Court's lack of subject matter jurisdiction over the plaintiff's claim since the applicable administrative remedies had not been exhausted.[7]

The plaintiff's claims against VUMC, MetLife and United Fund were also removed to this Court,[8] as United Fund and MetLife contended that these claims arose under the Employee Retirement and Income Security Act (ERISA),[9] pursuant to 29 U.S.C. § 1001 *et seq.* *See* notice of removal (filed December 31, 1991; Docket Entry No. 1) in Case Number 3–91–1069. Defendant VUMC was subsequently nonsuited. *See* plaintiff's notice (filed February 7, 1992; Docket Entry

---

2. The plaintiff objects to the absence in the Report and Recommendation of any findings concerning the claim for statutory double damages under 42 U.S.C. § 1395y(b)(3) and states that the evidence before the Court indicates that he is entitled to this statutory remedy. *See* Docket Entry No. 76. The Court agrees that the failure to provide primary payment as required by the Medicare Secondary Payer statute is established and that double damages are warranted.

3. MetLife's objection to the Magistrate Judge's failure to use the arbitrary and capricious standard in reviewing its benefits determination is rendered moot, as explained below.

4. United Fund objected to only one aspect of the Report and Recommendation, namely, the recommendation that the action be stayed pending resolution of the plaintiff's state probate court claim. This objection is rendered moot by the dismissal of that state court claim. *See* Docket Entry No. 87, attachments 1 and 2.

5. United Fund moved to strike an affidavit (filed March 5, 1993; Docket Entry No. 56) submitted by the plaintiff in support of his motion for summary judgment and in opposition to the defendants' motions for summary judgment. Because the Court finds that Vanderbilt University Medical Center's claim against Mr. Perry's estate has no bearing on whether the charges incurred by Mr. Perry during his hospitalization were legal obligations, as is discussed below in section II(B)(1), this motion shall be dismissed as moot.

6. This action became civil action No. 3–91–1061.

7. Defendant Sullivan made a motion (filed December 2, 1992; Docket Entry No. 26) to dismiss on the grounds that Perry had not exhausted his administrative remedies, which was granted by order (Docket Entry No. 31) entered on December 17, 1992. However, because the Court was advised of the lack of service of the motion on all parties, *see* Docket Entry No. 32 (filed December 28, 1992), the Court granted the unserved parties leave to file a response. Order (entered December 29, 1992; Docket Entry No. 33). Although MetLife did not file any response, United Fund filed a response (filed January 15, 1993; Docket Entry No. 35) of no opposition to the Secretary's motion. The Court shall formally reinstate its order (Docket Entry No. 31) dismissing the plaintiff's action against defendant Sullivan.

8. This cause of action became civil action No. 3–91–1069.

9. The Court notes that the plaintiff's claims against both United Fund and MetLife arise under ERISA, which provides protection of employee benefits rights under an "employee welfare benefit plan," which is defined as "any plan ... maintained for the purpose of providing for its participants ... (A) medical, surgical, or hospital care or benefits ..." 29 U.S.C. § 1002(1)(A). The applicable portions of ERISA provide statutory enforcement by allowing a participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), or "to obtain other appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii).

No. 12); order (Docket Entry No. 14) entered February 11, 1992. The remaining two causes of action were consolidated by agreed order (Docket Entry No. 7) entered on January 24, 1992.

The plaintiff filed a motion (Docket Entry No. 17) on September 30, 1992, to amend the complaint to include additional causes of action under ERISA and 42 U.S.C. § 1395y, which was granted by the Court. Order (entered October 20, 1992; Docket Entry No. 19). The plaintiff's amended complaint (Docket Entry No. 20) was filed on October 20, 1992.

The plaintiff's claims arise out of medical bills which were incurred during Harold Perry's hospitalization at VUMC in late 1988. The facts are undisputed. Mr. Perry was an employee at General Electric (GE) for many years until he became disabled and retired in 1983. As provided in the GE benefits package, he continued to maintain medical coverage under a plan administered by MetLife. Mr. Perry became ill and was hospitalized at VUMC from November 23, 1988, until his death on December 24, 1988. During this period of time, Mr. Perry's wife was employed by Kroger and both she and Mr. Perry were beneficiaries of Kroger's employee medical plan administered by United Fund. After receiving a bill for the medical expenses incurred during Mr. Perry's hospitalization from VUMC, MetLife declined payment, stating that the GE medical plan was not the primary payer.[10] Likewise, United Fund declined payment of the bill submitted by Mr. Perry's estate, stating its benefits could be determined only after payment was made by the primary payer, which it asserted was the GE plan.[11]

In essence, the plaintiff contends that Mr. Perry's medical expenses of approximately $117,539.13 were never paid despite the fact that he had medical coverage through both his former employer's benefits plan and the health benefits plan of his wife's employer.[12] He claims that one or both of these medical benefits plans are responsible as primary payer for Mr. Perry's VUMC medical expenses and that each failed to fulfill its responsibility to provide health care coverage as set forth in the benefits plan and as required by the Medicare Secondary Payer statute.

In response, MetLife contends that United Fund is the primary payer on Mr. Perry's medical claim under the Social Security Act and that MetLife's responsibility for coverage would be tertiary to Medicare's secondary status.[13] Furthermore, MetLife claims that any responsibility to pay is contingent upon Mr. Perry's legal obligation to pay the expenses in question and because VUMC's claim against Mr. Perry's estate is time-barred, MetLife is not required to pay.

As might be expected, United Fund asserts that MetLife is the primary payer on the medical claim and that MetLife's determination of benefits is required before United Fund can determine its benefits under the coordination of benefits provisions. It, too, claims that VUMC's medical expense claim against Mr. Perry's estate is time-barred and therefore it is not obligated to pay the expenses.

The Magistrate Judge concluded that MetLife is the primary payer under the Medicare Secondary Payer (MSP) statute, 42 U.S.C. § 1395y(b)(1)(B), and the administrative guidelines promulgated thereunder. Report and Recommendation (Docket Entry

---

10. The GE plan contains coordination of benefits provisions granting its trustee discretionary authority to determine the order of benefit payment. *See* Docket Entry No. 42, exhibit A at 100039 and exhibit B at 100074.

11. The health care plan administered by United Fund provides that its trustees possesses discretionary authority to determine eligibility for benefits and to construe the plan's terms. The coordinating provision of the plan states that "the benefits of a Plan which covers the person on whose expenses claim is based other than as a

Dependent shall be determined before the benefits of a Plan which covers such person as a Dependent." Docket Entry No. 45, exhibit A at 94–96.

12. It is undisputed that Mr. Perry was also eligible for medical benefits under the Medicare program.

13. This seems to be the position of defendant Sullivan as well. *See* memorandum (filed December 2, 1992; Docket Entry No. 27) at 10–13.

No. 71) at 5. In arriving at this conclusion, the Magistrate Judge explained that Mr. Perry remained a GE employee despite his disability and was entitled to benefits under the MetLife plan, *id.* at 5–6, and that Mr. Perry's rights as an employee under that plan are recognized by ERISA. *Id.* at 6.

In its objections (Docket Entry No. 77) to the Report and Recommendation, MetLife contends that the facts do not support the conclusion that Mr. Perry was a GE employee at the time his medical expenses were incurred. Objections at 1–6. MetLife further asserts that the Magistrate Judge erred in concluding that because the GE plan is governed by ERISA, Mr. Perry was considered by federal law to be an employee of GE. *Id.* at 6–7. Finally, MetLife contends that application of the MSP statute, 42 U.S.C. § 1395y(b)(1)(B), and the administrative guidelines dictates that United Fund is the primary payer of the medical expenses. Objections at 7–9. The Court finds that these objections have considerable merit.

## II.

The standard for summary judgment and its application are fully articulated by the Magistrate Judge in his Report and Recommendation and need not be reiterated here. Report and Recommendation at 10–18. The parties have conceded that there are no genuine disputes of material fact which must be resolved. Thus, the dispute centers around the resolution of two questions of law, namely: (1) Which medical benefits plan, if not both, is the primary payer responsible for payment of Mr. Perry's VUMC medical expenses? (2) Does VUMC's failure to file a timely claim against Mr. Perry's estate extinguish the primary payer's duty to pay Mr. Perry's valid medical expenses? Therefore, the Court must answer these questions of law in order to determine which of the parties' motions for summary judgment shall be granted.

### A. *Medicare Secondary Payer Statute*

Title XVIII of the Social Security Act (Medicare), 42 U.S.C. § 1395, *et seq.*, pro-vides health insurance for the aged and disabled. Although Medicare was initially the primary source of payment for its beneficiaries' medical expenses, Congress subsequently amended the Medicare Act by enacting the Medicare Secondary Payer (MSP) statute, 42 U.S.C. § 1395y, in order to reduce costs and protect the financial well-being of the Medicare program. *See* 128 Cong.Rec. 22402 (1982). The MSP statute is applicable to some Medicare beneficiaries having alternate health care payment plans, which are required to pay health care expenses "primary" to Medicare.

The MSP statute expressly provides for Medicare's secondary payer status relative to beneficiaries who are the working aged, disabled active individuals and individuals with end stage renal disease who are covered by designated group health plans. 42 U.S.C. § 1395y(b)(1). The statute specifically mandates that, other than a conditional payment, a Medicare payment may not be made for any medical expense for such individuals to the extent that "payment has been made, or can reasonably be expected to be made, with respect to the item or service as required" by the group health plans. 42 U.S.C. § 1395y(b)(2)(A)(i). The MSP statute further defines the term "primary plan" as a group health plan or large group health plan from which payment has been made or can reasonably be expected to be made. 42 U.S.C. § 1395y(b)(2)(A). Finally, the statute establishes a private cause of action for damages "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A).

It is undisputed that Mr. Perry was a participant in the health care plans administered by both MetLife and United Fund, although each of these defendants argues that primary payer status belongs to the other. Thus, the determinative question before the Court is whether Mr. Perry was a "disabled active individual" covered by either health care plan, thereby requiring primary payment of his medical expenses by one or both administrators.[14]

14. The Court notes that interpretation of the

coordination of benefits provisions of the plans is

The Court must first determine whether Congress manifested an "unambiguously expressed intent" that resolves this question. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, 702–03 (1984). Of course, the statutory language is the best indication of congressional intent. However, if the statute does not speak to the issue at hand, the Court must examine the administrative agency's construction of the law [15] and determine whether it is reasonable and conforms to the statutory language as well as statutory purposes. In such a situation, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703.

### 1. United Fund

The MSP statutory language itself expressly answers the question of whether Mr. Perry was a "disabled active individual" in regard to United Fund's plan. In addition to being disabled, Mr. Perry was obviously an "active individual," pursuant to 42 U.S.C. § 1395y(b)(1)(B)(iv)(I), by virtue of his being the spouse of an active Kroger employee. Because Mr. Perry was a "disabled active individual" in a large group health plan, payment could reasonably be expected to be made for his medical expenses by United Fund and this health plan is therefore a primary payer, relative to Medicare. As noted by the United States Supreme Court, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781, 81 L.Ed.2d at 703.

United Fund seems to suggest that because the language of its health care plan excludes primary coverage for Mr. Perry due to his coverage through his GE plan, United Fund was not responsible for payment of his medical expenses until after benefits from the GE plan were received. However, the statutory language obviously overrides any provisions in the plan which would serve to circumvent the purposes of the statute, and therefore United Fund cannot avoid its obligations as primary payer to the beneficiaries of the plan it administers by relying on its plan provisions. The MSP statute clearly provides a beneficiary's "private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide primary payment" in accordance with the statute. 42 U.S.C. § 1395y(b)(3)(A). Effectuation of the statute's provisions cannot be limited by private contractual provisions. *See Blue Cross and Blue Shield Ass'n v. Sullivan*, 794 F.Supp. 1166, 1173 (D.D.C. 1992); *United States v. Pisani*, 646 F.2d 83, 86 (3d Cir.1981). *See also Provident Life and Accident Ins. Co. v. United States*, 740 F.Supp. 492, 505 (E.D.Tenn.1990) (terms of plan cannot limit government's right of recovery set forth by statute; right limited only by statute). Furthermore, the Medicare Intermediary Manual clearly states that in advising a nonconforming large group health plan of its obligation to pay primary benefits in a given case, agency personnel are to "[e]xplain that State laws and contract provisions are not applicable if they conflict with the Federal requirement [16] even if they were in effect prior to January 1, 1987." 3 Medicare Intermediary Manual § 3492(J).

Thus, it is clear that United Fund is a primary payer for Mr. Perry's medical expenses.

### 2. MetLife

Whether or not United Fund's responsibilities as primary payer are to be shared by the

---

not required in determining whether a given plan is to be primary to Medicare under the MSP statute. If the statutory language reveals both plans to be primary payers under the MSP statute, such interpretation may be required to ascertain the contributions of each.

**15.** The Supreme Court noted that "[t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making

of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703 (citing *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270, 292 (1974)).

**16.** This would obviously apply to any plan provisions requiring payment by another plan before benefits are determined, particularly if the other plan is not primary to Medicare coverage.

group health plan administered by MetLife poses yet another question. This would be possible if, under the MSP statute, MetLife is also determined to be primary to Medicare or if MetLife must pay primary to United Fund under the coordination of benefits provisions of the two policies. In the latter situation, the combined payment of both plans would be the primary payment to which Medicare is secondary. *See* 3 Medicare Intermediary Manual § 3491.6(c); memorandum (Docket Entry No. 27) at 12.

█ While it is readily apparent that Medicare's secondary payer status applies to active individuals who are disabled, it is unclear whether Congress intended to include disabled retired individuals in this category. Congress has not directly spoken to this precise issue and, as a consequence, it is unclear whether MetLife's plan covering Mr. Perry is a primary payer, relative to Medicare. Examination of the statutory language reveals a conspicuous absence of any reference to "retiree" in the MSP statute, although the term "active" is used a number of times in the statutory language, which suggests that Congress did not intend to include retired individuals in the category of "active" individuals. Certainly, including "retiree" in the category of individuals to be covered by the MSP statute would render the designation of "active" in the statute pure surplusage and meaningless. If Congress had intended all Medicare beneficiaries having alternate health care coverage to be included in the MSP statute, the language setting forth the

individuals comprising the three applicable categories, namely, the working aged, disabled active individuals and those with end stage renal disease, was entirely unnecessary.[17] Attributing the usual meaning to the statutory language leads to the logical conclusion that the MSP statute applies only to health care plans which cover individuals who are working or have an otherwise active employment status.

Examination of the legislative history supports this conclusion. Enactment of the legislation and the subsequent amendments[18] which now comprise the MSP statute indicates that Congress intended Medicare to be the secondary payer for certain categories of *working* individuals. The Court notes that nowhere in the amended statutory language is there any indication that Congress intended to extend Medicare's secondary payer status beyond that initially provided to select categories of workers. Likewise, the Court is not aware of any statements or other evidence in the written legislative history suggesting Congress intended to further extend Medicare's secondary payer status to retired individuals.

### a. Agency interpretive guidelines

Even if one concluded that the statute was ambiguous concerning retirees, the insights provided by the interpretations of the appropriate administrative agency, the Health Care Financing Administration (HCFA), confirm that retirees are not included in the

---

**17.** In statutory construction, one assumes that the language chosen by Congress has meaning and is present for a purpose.

**18.** Initially, the Medicare Act was amended to provide that Medicare payments for medical expenses for end stage renal disease would be reimbursed by employer group health plans, thereby making Medicare the secondary payer. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35 § 2146, 1981 U.S.S.C.A.N. (95 Stat.) 800. The Act was amended to make Medicare the secondary payer for employed individuals and their spouses aged 65 to 69 who were covered under an employer group health plan (the working aged). *See* Senate Committee on Finance, Tax Equity and Fiscal Responsibility Act of 1982, 97th Cong., 2d Sess. 16 (1982), *reprinted in* 1982 U.S.S.C.A.N. 781, 792–93. In his remarks concerning extension of the MSP

statute to the working aged, Senator Dole stated, "Medicare will become secondary for older *workers* who choose to remain covered under the group health plans provided by their employers." 28 Cong.Rec. 22402 (1982) (emphasis added).

Subsequent amendments by Congress extended Medicare's working aged provision to individuals age 70 and over, *see* Budget Reconciliation Act of ·1986, Pub.L. No. 99–272 § 9201, 1986 U.S.S.C.A.N. (100 Stat.) 170, as well as to individuals who are disabled and covered by large group health plans. *See* Budget Reconciliation Act of 1986, Pub.L. No. 99–509 § 9319, 1986 U.S.S.C.A.N. (100 Stat.) 2010–11. *See also* Budget Reconciliation Act of 1986, Pub.L. No. 99–509 § 5000(e), 1986 U.S.S.C.A.N. (100 Stat.) 2012–13 (study of disabled beneficiaries and family); *United States v. Blue Cross and Blue Shield,* 726 F.Supp. 1517, 1519 (E.D.Mich.1989) (discussion of evolution of federal Medicare program).

**1408**

category of individuals to whom the MSP statute applies. As noted by the Supreme Court, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703.

Although the HCFA has not promulgated specific regulations defining "active individual" and "employee," it has published interpretative guidelines in its Medicare Intermediary Manual.[19] Although the manual is not a regulation and therefore has no legal force, *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685, 690 (1981), "the interpretation of an agency charged with the administration of a statute is entitled to substantial deference." *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728, 736 (1982). *See also Ridgeway v. Sullivan,* 804 F.Supp. 1536, 1538–39 n. 2 (N.D.Ga.1992) (Secretary's interpretation of statute is entitled to substantial deference).

The HCFA guidelines clearly differentiate between active employee and retired employee status. For example, the manual states that even if a large group health plan includes a plan for former employees, such individuals are not included within the definition of "active individual." 3 Medicare Intermediary Manual § 3492(C)(2). The manual clarifies that an employee is an individual who is actively working or a disabled person whose relationship to the employer is indicative of employee status. *Id.* § 3492(C)(4). Employee status is assessed by determining

whether any of the enumerated factors[20] are present. *Id.*

Yet another section of the manual is devoted to listing those individuals for whom Medicare is not the secondary payer, which includes those whose health plan coverage is not based on employment or a relationship to an employee. *Id.* § 3492(D). The example cited specifically addresses the precise question at issue: "For example, Medicare is primary for a disabled individual who is covered under an LGHP [large group health plan] as a retired former employee (and who does not meet any of the criteria in subsection C.4,) or the spouse of a retired former employee." *Id.*

Other sections of the HCFA manual specifically make reference to the fact that Medicare's secondary status only applies if the health insurance plan is by reason of current employment and therefore excludes plans for retirees which are based on past employment. *Id.* §§ 3491.1(D), 3491.3. Still another section provides for the resumption of Medicare's secondary status should a retiree return to work. *Id.* § 3491.2(B). Obviously, retired individuals covered by employer group health plans by virtue of their past employment comprise a distinct category, separate from that of working or otherwise active individuals.

Because of the conspicuous absence of any reference to "retiree" and the recurrent use of the term "active" in the MSP statute, the Court finds that the above interpretation of the MSP statute by the HCFA is a reasonable and permissible construction of the statute and is therefore entitled to substantial

19. HCFA's associate regional administrator for Medicare, Richard L. Warren, has stated that the Medicare Intermediary Manual "is considered to be a policy statement of the Medicare program and is binding upon the Medicare fiscal intermediaries in its handling of cases." Memorandum (filed December 2, 1992; Docket Entry No. 27), attachment (Warren affidavit) ¶ 8. Copies of the manual's provisions are attached to this memorandum as exhibits A, B and C.

20. The manual states that if any of the following factors is present, a disabled individual who is not actively working is nonetheless considered to be an employee for purposes of the MSP statute: (1) receipt of payments by employer which are subject to FICA taxes; (2) reference to term

employee by state or federal law; (3) payment of taxes by employer just as for actively working employees; (4) accrual of vacation time or receipt of vacation pay; (5) participation in employer's benefit plan in which only employees may participate; (6) right to return to duty if condition improves; (7) accrual of sick leave. *Id.*

Two indicators of employee status for purposes of the MSP disability provision were deleted, effective October 31, 1988, because it was not felt they were always indicative of current employee status: (1) accrual of seniority for pension purposes; and (2) entitlement to pension upon reaching retirement age. *See* Docket Entry No. 40, exhibits C and D.

deference. The statutory language is consistent with the conclusion that Congress did not intend to include retired individuals in the category of "active" individuals. As noted by the Supreme Court, "[i]n such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782, 81 L.Ed.2d at 703. Although it is true that excluding MetLife as a primary payer results in decreased alternate sources of payment for Mr. Perry's medical expenses, the Court finds that the MSP statute applies only to health care plans which cover working or otherwise "active" individuals.[21]

### b. Application of MSP statute and interpretive guidelines

■ MetLife contends that the Magistrate Judge's conclusion that Mr. Perry was a GE employee is erroneous. The Court finds that this assertion has merit. The evidence before the Court indicates that Mr. Perry was not an "employee" as defined for purposes of the MSP statute. For example, Mr. Dziura, claims consultant for MetLife, stated that at the time of his hospitalization, Mr. Perry was a participant in the GE health care plan and that MetLife was advised by GE that he was "a GE-pensioned retiree[22] since 1983, and was not an active employee." Dziura affidavit (filed January 15, 1993; Docket Entry No. 42) ¶ 8. After receiving VUMC's claim for Mr. Perry's medical expenses, MetLife made inquiry to GE concerning indicia of employment status, in order to determine whether he was an "active individual" or "employee" for purposes of the MSP statute. *Id.* ¶ 12. GE responded by advising MetLife that Mr. Perry met none of the criteria. *Id.* GE specifically informed MetLife that the GE health care plan in which Mr. Perry participated covered eligible GE employees,

their dependants and GE retirees, and was not restricted solely to employees. *Id. See also* Docket Entry No. 42, exhibit A (summary plan description of GE plan) at 100029, 100040–41. United Fund has provided no evidence of any criteria[23] indicative of Mr. Perry's employee status which thereby supports its contention that Mr. Perry was an employee.

Accordingly, the example provided in the HCFA's interpretive guidelines exactly mirrors this situation, namely, "a disabled individual who is covered under an LGHP as a retired former employee (and who does not meet any of the criteria in subsection C.4,) . . . ." 3 Medicare Intermediary Manual § 3492(D). HCFA guidelines specifically provide that such an individual is not subject to the MSP statute's limitation on payment. *Id.* Thus, relative to Mr. Perry's health care plan administered by MetLife, Medicare is the primary payer. In arriving at this conclusion, the Court notes the distinction between Mr. Perry's retiree status and that of the plaintiff in *Ridgeway,* 804 F.Supp. at 1537, who was a disabled employee who had not retired and whose employer considered her to be an employee.

The Magistrate Judge's recitation of the MSP statute as requiring large group employer plans to be primary payers for disabled individuals is not entirely correct, since the statute actually applies to "disabled active individuals." 42 U.S.C. § 1395y(b)(1)(B). While the HCFA guidelines expressly include the health care plan under which a disabled individual retains benefits, those guidelines also dictate that this applies only when at least one of the criteria indicative of employee status is present.[24]

Likewise, the Magistrate Judge's statement that federal law recognizes Mr. Perry as a GE employee due to the GE plan's

---

21. The Court notes that inclusion of retirees in the category of individuals to whom the MSP statute applies could serve to deter employers from including medical benefits in their retirement packages for former employees.

22. Mr. D'Arcy, administrator for the United Fund plan, also stated that Mr. Perry was a retired employee of GE. D'Arcy affidavit (filed February 3, 1993; Docket Entry No. 45) ¶ 10.

23. These criteria are found in 3 Medicare Intermediary Manual § 3492(C)(4).

24. It is clear that the criteria listed are more typically applicable to disabled persons who, although not currently working, have retained their active employment status, as opposed to individuals who have retired permanently.

inclusion of him in its coverage, Report and Recommendation at 28, is inaccurate. As noted by MetLife, not all participants of health plans which are governed by ERISA are employees. Objections (Docket Entry No. 77) at 6–7. The statute clearly defines the term "participant," and specifically includes former employees as well as current employees. 29 U.S.C. § 1002(7). Accordingly, the conclusion that Mr. Perry must have been a GE employee because the GE plan under which he was covered is regulated by ERISA is erroneous.

### 3. Coordination of benefits provisions

■ As noted previously, the Court could determine MetLife to be a primary payer, notwithstanding its secondary status, if MetLife's payment is primary to that of United Fund under the coordination of benefits provisions of both policies. See 3 Medicare Intermediary Manual § 3491.6(C). In such a situation, the combined payment of both plans comprises the primary payment to which Medicare is secondary. Id.

Examination of the coordination of benefits provisions of both plans reveals that each includes a clause requiring that its coverage be determined secondary to other applicable insurance for Mr. Perry.[25] Thus, MetLife deemed its coverage to be secondary to that administered by United Fund, while United Fund considered its coverage to be secondary to the GE plan. Since MetLife's coordination of benefits clause does not provide for payment primary to that of the United Fund plan, the example provided by the HCFA manual which allows for the combined payment of both plans as the primary payment is inapplicable. Therefore, MetLife remains

the tertiary payer, with United Fund the primary payer and Medicare the secondary payer of Mr. Perry's medical expenses.

### B. Enforcement of federal statutes

The question remaining before the Court is, in light of the conclusion that United Fund is the primary payer of Mr. Perry's medical expenses, whether United Fund's failure to provide primary payment violated ERISA[26] and the MSP statute[27] such that enforcement is required.

#### 1. Effect of VUMC's claim being time-barred

■ United Fund contends that, because VUMC's claim against Mr. Perry's estate is time-barred,[28] those medical expenses are not expenses for which he is "legally obligated" and United Fund is therefore not required to pay. Memorandum (filed February 26, 1993; Docket Entry No. 51) at 4–5. In particular, United Fund cites a section of its employee health care plan which states that the trustees administering the plan may not pay any expense benefits for or in connection with any charges "which the Employee or Dependent is not legally obligated to pay." See D'Arcy affidavit (Docket Entry No. 45), exhibit A at 70. United Fund concludes that "if it is determined that the Perry estate is not legally obligated to pay the expenses incurred at Vanderbilt, the Health and Welfare Fund may not pay those expenses and would be entitled to summary judgment." Memorandum (Docket Entry No. 51) at 5.

United Fund's reliance on the language of its plan to avoid payment of Mr. Perry's

---

**25.** The plan administered by United Fund provides that "[t]he benefits of a Plan which covers the person on whose expenses claim is based other than as a Dependent shall be determined before the benefits of a Plan which covers such person as a Dependent." See Docket Entry No. 45, exhibit A at 96. Likewise, the plan administered by MetLife excludes expenses for medical coverage "to the extent of benefits provided under any employer group plan other than this Plan." See Docket Entry No. 42, exhibit A at 100036 and exhibit B at 100073–74.

**26.** ERISA provides that a participant or beneficiary may bring a civil action to recover benefits

due under the terms of the plan, 29 U.S.C. § 1132(a)(1)(B), or to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(B)(ii).

**27.** The MSP statute establishes a private cause of action for damages in the case of a primary plan which fails to provide for primary payment. 42 U.S.C. § 1395y(b)(3)(A).

**28.** VUMC's claim against Mr. Perry's estate was dismissed with prejudice because the state probate court determined it was time-barred. See Docket Entry No. 87, attachments 1 and 2.

medical expenses is misplaced. Because the language of the plan does not specifically address any legal obligations of a dependent's estate nor require this as a condition of payment, it cannot be assumed that this is a condition of the plan. The Court concludes that it is not, for the following reasons.

As an initial matter, the Court notes that VUMC's claim against the Perry estate,[29] the health insurance claim submitted by the Perry estate to United Fund for payment, and the plaintiff's claims against United Fund pursuant to 29 U.S.C. § 1132(a) and 42 U.S.C. § 1395y(b)(3)(A) are separate legal entities, although they all involve the same medical expenses. It is obvious that United Fund's determination of whether Mr. Perry was legally obligated for the charges submitted to United Fund was not contingent upon whether or not VUMC promptly filed its claim against the estate following his death. That would be a nonsensical and unreasonable construction of this provision.[30] Rather, fulfillment of this plan condition depended upon whether or not, at the time the services were rendered, Mr. Perry was required by law to pay the resulting medical expenses. It cannot be disputed that Mr. Perry was legally obligated to pay for the medical expenses which were incurred during his hospitalization. In reviewing Mr. Perry's claim, United Fund trustees did not question the validity of the charges in question, nor claim that this condition of the plan had not been met. Rather, United Fund denied payment because the trustees concluded that determination of its benefits could occur only after the benefits under the GE plan had been determined. United Fund cannot attempt to assert this condition of payment after the fact in order to avoid payment of a legitimate medical claim.

In addition, applying the doctrine that ambiguities in insurance documents are resolved against the party responsible for the drafting compels the conclusion that the plan

did not include the legal obligation of anyone other than the employee or dependent as a condition to payment. Robert E. Keeton and Alan I. Widiss, *Insurance Law* 628 (1988). Moreover, as noted previously, benefit plan provisions are inapplicable if they conflict with federal law. If United Fund's interpretation is accepted, thereby precluding payment of Mr. Perry's medical expenses, Medicare would in effect become primary payer for Mr. Perry, which is a result contrary to federal law and Congressional intent.

### 2. Abuse of discretion

■ The Court must also determine whether United Fund abused its discretion in refusing primary payer status regarding Mr. Perry's medical expenses. The Supreme Court has held that the de novo standard is to be used in reviewing an administrator's decision to deny benefits, unless the benefit plan provides the administrator with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80, 95 (1989). In that event, application of the highly deferential arbitrary and capricious standard of review is appropriate. The plan document administered by the United Fund trustees clearly grants such discretionary authority. *See* Docket Entry No. 45, exhibit A at 4. Therefore, the Court reviews the decision of the United Fund trustees under the arbitrary and capricious standard.

The United States Court of Appeals for the Sixth Circuit has held that "the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). The United Fund trust-

---

**29.** The Court notes that this claim only became necessary because United Fund refused to pay the medical expenses at issue.

**30.** Such a limitation would make one's health plan benefits contingent upon the actions of another independent entity and, as a result, rather

sophisticated knowledge and legal action would be required to protect one's benefits. Obviously, this conflicts with a beneficiary's reasonable expectations and, therefore, ought not be enforced. Robert E. Keeton and Alan I. Widiss, *Insurance Law* 634 (1988).

ees interpreted its coordination of benefits clause to require that the GE plan was primary payer and United Fund had no obligation to pay until after GE's benefits had been determined. Therefore, United Fund refused to pay Mr. Perry's medical expenses until benefits under the retirement plan administered by MetLife were determined. Docket Entry No. 27, exhibit F ¶ 3. Obviously, this argument must yield to the extent it contradicts federal law. *Colonial Penn. Ins. Co. v. Heckler*, 721 F.2d 431, 441 (3rd Cir.1983); 3 Medicare Intermediary Manual § 3491.6(C). United Fund's conclusion is obviously contrary to the result commanded by the MSP statute, which compels United Fund to pay primary benefits but places MetLife as tertiary payer. Because this decision is contrary to federal law, it is arbitrary and capricious.

In addition, the plaintiff's comments concerning United Fund's failure to consider the clear language of the MSP statute and sole reliance on its own plan language in arriving at its decision are noteworthy. Memorandum (filed March 5, 1993; Docket Entry No. 55) at 5–6. There is no evidence that United Fund even attempted to apply the MSP statute in its analysis of Mr. Perry's coverage, despite the fact that this statute clearly applies to the United Fund plan. This fact, in conjunction with the ambiguity in applicability of the statute to the GE plan, informs the rational decision-maker that at the very least, the combined payment of both plans would be primary.[31] Thus, refusing payment until MetLife distributed benefits under the GE plan was arbitrary[32] and contrary to Congress' mandate.

Furthermore, a comparison of the plans reveals, even to an unsophisticated reader,[33] that both attempt to provide only excess coverage in the event other health insurance is available. As such, they are contradictory and mutually repugnant and, therefore, unenforceable.[34] *See* Robert E. Keeton and Alan I. Widiss, *Insurance Law* 258 (1988). The Court further notes that the overriding public policy consideration inherent in implementing the MSP statute renders these clauses unenforceable. *See id.* Such factors were known or should have been known to United Fund's administrators and yet they arbitrarily ignored them, while continuing to insist that the GE plan's benefits had to be determined prior to benefits from the United Fund plan.

Because the decision of United Fund's administrators to deny primary payment of Mr. Perry's medical claim was arbitrary and contrary to law, *Daniel*, 839 F.2d at 267, the Court finds that United Fund abused its discretion. Accordingly, the Court finds that United Fund is subject to a private cause of action for double damages, pursuant to 42 U.S.C. §§ 1395y(b)(1)–(3)(A). In addition, United Fund is subject to civil enforcement of the terms of its health benefits plan, pursuant to 29 U.S.C. § 1132(a)(3).

### III.

After independently reviewing the Report and Recommendation and the entire record, the Court finds the Magistrate Judge's findings and conclusions are not correct and, therefore, rejects the Report and Recommendation. The plaintiff's objection (Docket Entry No. 76) and the objections (Docket Entry No. 77) of defendant MetLife[35] to the

**31.** As noted above, however, the interpretive guidelines do not provide for combined payment of both health care plans as primary payer in this particular situation.

**32.** The Court refers to the substantial effort made by MetLife in determining Mr. Perry's status under the MSP statute, *see* Dziura affidavit (Docket Entry No. 42) ¶¶ 8, 12, despite the provision in the GE health plan which excluded benefits paid for by other health insurance, as further evidence of United Fund's arbitrary method of determining Mr. Perry's benefits.

**33.** This is a point that even an intersection lawyer, dealing with primary and excess coverage

questions under automobile insurance policies, would recognize.

**34.** In such instances, the policies are considered to provide insurance at the same level. *See* Allan D. Windt, *Insurance Claims and Disputes* 400 (1982).

**35.** In addition to its objections concerning the Magistrate Judge's findings of fact and conclusions of law, MetLife posed the further objection that the Magistrate Judge failed to use the arbitrary and capricious standard in his review of MetLife's determination of Mr. Perry's benefits. *See* objections at 9–10. The Court's determina-

Report and Recommendation shall be sustained.

Accordingly, the Court shall grant the plaintiff's motion (Docket Entry No. 54) for summary judgment to the extent that United Fund is primary payer of Mr. Perry's medical expenses. In addition, the Court shall grant MetLife's motion (Docket Entry No. 39) for summary judgment to the extent that it is not primary payer of Mr. Perry's medical expenses. Finally, the Court shall deny defendant United Fund's motion (Docket Entry No. 50) for summary judgment.

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the Court rejects the Report and Recommendation of the Magistrate Judge (entered July 12, 1993; Docket Entry No. 71). The plaintiff's objection (Docket Entry No. 76) and the objections[1] (Docket Entry No. 77) of defendant Metropolitan Life Insurance Company (MetLife) to the Report and Recommendation are sustained.

Accordingly, the Court grants the plaintiff's motion (Docket Entry No. 54) for summary judgment to the extent that United Food and Commercial Workers Health and Welfare Fund (United Fund) is primary payer of Mr. Perry's medical expenses. In addition, the Court grants MetLife's motion (Docket Entry No. 39) for summary judgment to the extent that it is not primary payer of Mr. Perry's medical expenses. Finally, the Court denies defendant United Fund's motion (Docket Entry No. 50) for summary judgment.

Therefore, defendant United Fund is the primary payer of Mr. Perry's expenses, while Medicare is secondary payer and MetLife is tertiary payer.[2] The plaintiff shall have and recover of United Fund double damages in the amount of $235,078.26, pursuant to 42 U.S.C. §§ 1395y(b)(1)–(3)(A), and attorney fees pursuant to 29 U.S.C. § 1132(g)(1). Application for attorney fees shall be made in accordance with Rule 13(e), Local Rules of Court.

In addition, the Court reinstates its previous order (entered December 17, 1992; Docket Entry No. 31) granting defendant Sullivan's motion (filed December 2, 1992; Docket Entry No. 26) to dismiss plaintiff's claim against defendant Sullivan, without prejudice, because administrative remedies have not been exhausted.

Entry of this order[3] shall constitute the judgment in these actions.

It is so ORDERED.

---

tion that MetLife is not primary payer for Mr. Perry's medical expenses renders this objection moot. As noted previously, United Fund's objection was rendered moot because VUMC's state court claim was dismissed.

1. The Court's determination that MetLife is not primary payer for Mr. Perry's medical expenses renders MetLife's objection concerning the Magistrate Judge's failure to apply the arbitrary and capricious standard moot. Likewise, the objection of defendant United Fund is deemed moot.

2. The Court notes that, in the event that Mr. Perry's medical expenses are not fully paid by United Fund, as primary payer, and Medicare, as secondary payer, MetLife is obligated to remit payment in its role as tertiary payer.

3. Vanderbilt University Medical Center was non-suited by order (Docket Entry No. 14) entered February 11, 1992.