**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-40632

_____


JOE HAMMACK; ANN HAMMACK,

                              Plaintiffs,

 JOE HAMMACK,

                              Plaintiff-Appellant,

                VERSUS

 BAROID CORPORATION, formerly doing business as N L
 Industries, Incorporated; THE PENSION AND EMPLOYEE
 BENEFITS COMMITTEE OF N L INDUSTRIES, INCORPORATED,

                              Defendants,

 BAROID CORPORATION, formerly doing business as N L
 Industries, Incorporated,

                              Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____
June 9, 1998


Before KING, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


     In this case arising under the Employment Retirement Income
Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 *et seq.*, Joe
Hammack sued Baroid Corporation, demanding coverage under the
company's health plan for his wife's hospital bills.  The district

court concluded that the Medicare as Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y(b), does not apply and awarded Hammack $124, a fraction of what he had sought. Finding no error, we affirm.

2

I.

When Hammack retired from his job with NL Industries in 1985, at age 55, he was under an NL Industries health plan that qualifies as a benefit plan under ERISA.[1]  The plan provided, in relevant part:

> If you retire either directly from active employment or from an approved company disability plan under a company sponsored retirement plan, Option A of the medical plan will continue at no cost to you and your eligible dependents. . . . Once you or your spouse becomes eligible for Medicare, benefits will be calculated by reducing covered medical expenses by the amount of Medicare payments.  In calculating benefits payable, it is assumed that both you and your dependents have both part A and B Medicare coverage.

At the time of Hammack's retirement, his wife, Ann, was over 65.

In 1988, Ann Hammack incurred outpatient medical bills totaling close to $1,000.  Baroid paid part of these bills, another insurer paid part, and the Hammacks paid the remainder.

At some point before February 1989, Baroid notified the Hammacks that they were best advised to purchase Medicare, because the benefits under the Baroid plan would be calculated as though they had enrolled in Medicare, regardless of whether they actually had.  In February 1989, the Hammacks contacted the Social Security Administration.  Shortly thereafter Ann Hammack paid the required premium and enrolled in Medicare Part B but not in Part A.

Ann Hammack was hospitalized twice in 1989:  once from April 6 through April 9, and once from June 9 through June 14, resulting in bills totaling $5,670.26.  Medicare covered part of these

---

[1] Baroid is NL Industries's successor-in-interest and has assumed responsibility for the health plan.

expenses.  Baroid covered part as well, but it calculated the benefits as though Ann Hammack were enrolled in both Part A and Part B, resulting in reduced payouts to the Hammacks.

## II.

Joe and Ann Hammack sued Baroid in state court,[2] and Baroid removed to federal court.  Following a bench trial, the court concluded that Baroid did not abuse its discretion in determining the Hammacks' benefits.  The court ordered Baroid to pay the Hammacks $124SSthe amount of a bill that Baroid stipulated it had wrongly failed to pay.  The court submitted factual findings and conclusions of law in a seven-page order.  On the final page the court stated:  "FINAL JUDGMENT should issue.  It is so ORDERED." The court did not, however, file a separate document noting that this was a final judgment.

Twenty months after this order was issued, Joe Hammack returned to the court and requested entry of judgment.  The court granted the motion and issued a single-page, separate document reflecting the final judgment.

We address two questions.  First we must decide whether we have jurisdictionSSor whether Hammack, by waiting twenty months to seek a separate document noting the entry of final judgment, waived his right to appeal.  The second questionSSassuming we have jurisdictionSSis whether the district court erred in concluding that, because Hammack was a retiree, the MSP statute did not apply.

---

[2] Ann Hammack does not appeal the district court judgment.

4

IV.

Baroid charges that Hammack's lengthy delay in seeking entry of judgment constitutes waiver of his right to appeal. Under FED. R. APP. P. 4(a)(1), a civil litigant ordinarily has thirty days after "entry of the judgment or order appealed from" to file notice of appeal. This rule in turn refers us to FED. R. CIV. P. 58 and 79(a). Rule 58 contains what is known as the "separate document" rule: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Rule 79(a) requires the court to record the entry of a final judgment in its civil docket.

A.

Baroid does not dispute that Hammack complied with the plain language of the rule by filing his notice of appeal within thirty days.[3] Instead, Baroid argues that, when a party that has received a final judgment waits so long before seeking a separate document, we should construe the delay as waiver of the right to appeal. Such a rule, Baroid suggests, will promote certainty and finality in litigation. This question is *res nova* in this circuit.

Baroid's position is not entirely lacking in legal support. In *Fiore v. Washington County Community Mental Health Ctr.*, 960 F.2d 229 (1st Cir. 1992) (en banc), the court, concerned about reviving long dormant cases years after the parties considered them

---

[3] Nor does Baroid dispute that the seven-page order cannot qualify as a "separate document" for purposes of FED. R. CIV. P. 58.

over, drew an outer limit:

> We believe it appropriate, absent exceptional circumstances, to infer waiver where a party fails to act within three months of the court's last order in the case. . . . A party wishing to pursue an appeal and awaiting the separate document of judgment from the trial court can, and should, within that period file a motion for entry of judgment.

*Id*. at 236. The court explained that this three-month window would ensure that a failure to appeal was a matter of "choice, not confusion." *Id*. at 236 n.11. Baroid urges us to adopt *Fiore*'s rule and apply it in this case to quash Hammack's appeal.[4]

B.

The Supreme Court recognized waiver of the separate document requirement in *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978). There, the Court permitted waiver when the district court intended its opinion and order as the final decision in the case, when the judgment of dismissal was entered in the docket, and when neither party objected to the taking of the appeal. The Court envisioned its rule as preventing needless delay: Were the appeals court to dismiss the case for want of jurisdiction, the district court would simply issue a separate document and the appellant would once again take an appealSS"Wheels would spin for no practical purpose." *Id*. at 385. But the Court tempered its willingness to read rule 58

---

[4] Only one other circuit has considered this rule. In *Rubin v. Schottenstein, Zox & Dunn*, No. 96-3017, 1998 U.S. App. LEXIS 9004, at *20 (6th Cir. May 7, 1998) (en banc), the court expressly rejected *Fiore*'s approach and adopted the panel's view that while construing a three-month delay as waiver of the separate document requirement "may be a pragmatic resolution of the problem, it is not supported by the rules or the Supreme Court's statements on the issue." *Rubin v. Schottenstein, Zox & Dunn*, 110 F.3d 1247, 1253 n.4 (6th Cir. 1997).

flexibly, explaining that the rule should not be construed to cut off the rights of appellants. "The rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss." *Id*. at 386 (quoting 9 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 110.08[2], at 119-20 (2d ed. 1970)).

In construing rule 58, we have been faithful to the teaching of *Mallis* and have avoided interpreting the rule to extinguish appeals. For example, in *Baker v. Mercedes Benz of N. Am.*, 114 F.3d 57 (5th Cir. 1997), we characterized the rule as "a safety valve preserving a litigant's right to appeal in the absence of a separate document judgment." We held that under rule 58, a litigant could not have forfeited his right to appeal absent a separate document judgment, concluding that a party's "right to appeal cannot be prejudiced by failing to file a notice of appeal when no Rule 58 separate document judgment has been entered." *Id*. at 60. We specifically noted that "[i]f a separate document judgment is not entered . . . the time for filing an appeal does not begin to accrue until a judgment complying with the Rule 58 dictates has been entered." *Id*. Similarly, in *Simon v. City of Clute, Tex.*, 825 F.2d 940 (5th Cir. 1987), we all but foreclosed Baroid's argument by explaining that the separate document requirement "may be waived to allow an appeal in the absence of a separate document [as in *Mallis*], but not to cause a forfeiture of the right to appeal." *Id*. at 942 (footnote omitted).[5]

---

[5] *See also Seiscom Delta, Inc. v. Two Westlake Park (In re Seiscom Delta, Inc.)*, 857 F.2d 279, 283 (5th Cir. 1988) (noting that *Mallis* "should be read, where
(continued...)

While we have yet squarely to consider the First Circuit's approach in *Fiore*, the logic of our caselaw counsels its rejection. To the extent that we have permitted waiver of the separate document requirement, it has been in situations similar to that in *Mallis*SSwhere neither party objects to the taking of an appeal and strict application of the rule would prove a pointless and burdensome exercise. We have never employed the doctrine to extinguish a party's right of appeal, even when, as Baroid suggests, doing so might promote finality and certainty.[6]

Accordingly, we reject *Fiore* and hold that a party's delay in seeking a separate document judgment cannot constitute waiver of his right to appeal. Under the plain language of FED. R. APP. P. 4(a)(1) and FED. R. CIV. P. 58, the thirty-day period for taking an appeal does not begin to run until the court has issued a separate document and records entry of the final judgment in its civil docket. Should a court fail to issue a separate document, a

---

(...continued)
reasonably possible, to protect the right of appeal"). In *Seiscom Delta*, we underscored that rule 58 should not be used to extinguish an appellant's rights when the district court has entered an ambiguous order:

> Where . . . a party is severely prejudiced by lack of entry of a judgment because it is unclear whether a final judgment has indeed been entered, rule 58 should be applied mechanically . . . to favor the right of appeal by allowing the party in jeopardy to appeal from the separate-document judgment once one has been entered.

*Id*.

[6] We note that Hammack's 20-month delay is unusually long. In *Baker*, 114 F.3d at 59, the appellant, having received what appeared to be a final judgment, waited just over two months before seeking a separate document. In *Simon*, 825 F.2d at 942, while the appellants waited 17 months before seeking a writ of mandamus from the court of appeals, they repeatedly sought entry of final judgment from the district court during this period. What is unusual about this case is not only the length of the delay, but Hammack's total silence throughout.

8

party seeking finality remains free to request one.

V.

We now turn to the merits. Hammack argues that the provision of Baroid's plan under which a retiree's benefits are reduced by the amount of potential Medicare payments is invalid because it violates the MSP statute. He contends that the district court erred by deeming the statute inapplicable to retirees.

The district court concludedSSand Hammack concedesSSthat Baroid's plan endows its administrator with discretionary authority to make eligibility determinations and construe the plan's terms.[7] When an administrator is vested with such authority, its decisions are reviewed by a federal court for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In reviewing the district court's legal conclusions, such as whether the plan administrator abused its discretion, our standard of review is *de novo*. We review the district court's findings of fact for clear error. *Sunbeam-Oster Co. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996); *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995).

A.

---

[7] Specifically, the plan provides that the administrator shall have general responsibility for "Determination of Benefit eligibility" and "all powers necessary to carry out the provisions of the pertinent documents and . . . the exclusive right to construe such documents and to determine and resolve any question that may arise in connection with its funding, application or administration . . . ."

Under the MSP statute as it read in 1988 and 1989 when Ann Hammack received medical treatment, Medicare could not be the primary coverage for "employees" with private coverage through their employer. The statute provided:

A group health plan§§

(I) may not take into account, for any item or service furnished to an individual 65 years of age or older at the time the individual is covered under the plan by reason of the current employment of the individual (or the individual's spouse), that the individual is entitled to benefits under this subchapter under section 426(a) of this title, and

(II) shall provide that any employee age 65 or older, and any employee's spouse age 65 or older, shall be entitled to the same benefits under the plan under the same conditions as any employee, and the spouse of such employee, under age 65.

42 U.S.C. § 1395y(b)(1)(A)(i) (1988). Thus, the statute prohibited employers from designating Medicare as the primary payer for active employees§§the working aged§§but not for retirees. *See Provident Life & Accident Ins. Co. v. Leonard*, 526 So. 2d 721, 722 (Fla. Ct. App. 1988) (holding that MSP statute applies only to active employees, not retirees), *review denied*, 563 So. 2d 633 (1990).

Hammack argues that a 1993 amendment expanded the statute to include retirees. Presently, the statute applies to individuals with "current employment status," which is defined as an employee, an employer, or anyone "associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(A)(i), (b)(1)(E)(ii). But even if we were to apply the amended version of a statute to claims that arose before the amendments were enacted, it is not evident that the result would differ, for courts have continued to hold the

10

MSP statute inapplicable to retirees.[8]


                                   B.

    Hammack deploys two additional arguments.  First, he suggests

that any interpretation excluding retirees is inconsistent with the

MSP statute's purpose, *viz.*, to reduce Medicare outlays by ensuring

that private insurers pay first.[9]  Yet theories of underlying

intent or purpose cannot trump statutory languageSSand Hammack

points to no such language commanding the result he demands.

    In fact, the text of the statute indicates precisely the

opposite:  By limiting the statute's scope to "employees," Congress

consciously excluded retirees.  The MSP statute reversed the order

of payment in certain situations where Medicare beneficiaries enjoy

an alternate source of health care coverage; it does not follow

that the statute reversed the order of payment in *all* situations.

    Second, Hammack argues that Baroid's decision to reduce

payments under its plan by the amount the participants could

---

[8] *See, e.g., Medicare Benefits Defense Fund v. Empire Blue Cross Blue Shield*, 938 F. Supp. 1131, 1135 (E.D.N.Y. 1996) ("When an individual continues working past sixty-five or past the date when his or her covered spouse becomes sixty-five, the Medicare Secondary Payer statute becomes applicable.") (internal citation omitted); *Perry v. Metropolitan Life Ins. Co.*, 852 F. Supp. 1400, 1407 (M.D. Tenn. 1994) ("Attributing the usual meaning to the statutory language leads to the logical conclusion that the MSP statute applies only to health care plans which cover individuals who are working or have an otherwise active employment status."), *rev'd on other grounds sub nom. Perry v. United Food & Commercial Workers Dist. Union*, 64 F.3d 238 (6th Cir. 1995).

[9] *See, e.g., Blue Cross & Blue Shield v. Shalala*, 995 F.2d 70, 73 (5th Cir. 1993) ("Congress designed the MSP statute to prevent group health plans from providing that the plan will be the secondary payer if Medicare coverage exists."); *Baptist Mem. Hosp. v. Pan Am. Life Ins. Co.*, 45 F.3d 992, 997 (6th Cir. 1995) (quoting *Provident Life & Accident Ins. Co. v. United States*, 740 F. Supp. 492, 495 (E.D. Tenn. 1990)) (reasoning that by enacting MSP statute, "Congress sought to reduce Medicare spending and to insure the continued fiscal integrity of the Medicare program").

receive under Medicare was contrary to the plan's intent of providing free medical care to its former employees. Setting aside the question how Hammack elicits such a sweeping intent, we do not agree that, by designating Medicare as primary payer for retired employees, Baroid is thereby precluded from limiting its obligations.

In sum, we agree with the district court that because Hammack was a retiree, the MSP statute does not apply. Accordingly, the provision in Baroid's plan is not void under the statute, and the administrator did not abuse its discretion in discounting Hammack's payments by the amount of potential Medicare benefits.[10]

AFFIRMED.

---

[10] Hammack's "argument" seeking attorney's fees is limited to a breezy request at the conclusion of his brief. He appears not to have raised this claim in the district court, nor has he chosen to call to our attention any evidence or precedent in support of his claim. His request is therefore denied.