## CITY OF LAWRENCE *vs.* LAWRENCE PATROLMEN'S ASSOCIATION.

No. 00-P-1896.

Essex. September 13, 2002. - December 12, 2002.

Present: RAPOZA, KASS, & MILLS, JJ.

*Arbitration,* Collective bargaining, Arbitrable question, Authority of arbitrator. *Public Employment,* Indemnification of employee, Paid leave, Collective bargaining. *Labor,* Fire fighters, Police, Collective bargaining, Public employment, Arbitration. *Words,* "Work related."

This court concluded that the provisions of G. L. c. 41, § 100, requiring employers of police officers to indemnify them for medical expenses attendant on work-related injury, did not preclude submission to arbitration of the question of entitlement to paid leave under G. L. c. 41, § 111F, which provides that a police officer who suffers an incapacitating injury on duty shall receive paid leave for the period of incapacity; and that a city's motion to vacate an arbitration award that conferred paid leave on a police officer, who had suffered a transient ischemic attack while on patrol duty, was correctly denied. [706-709]

CIVIL ACTION commenced in the Superior Court Department on May 9, 2000.

The case was heard by *Peter W. Agnes, Jr.,* J., on motions for summary judgment.

*Albert R. Mason* for the plaintiff.

*Matthew E. Dwyer* for the defendant.

KASS, J. Although the precise question, the interrelation of G. L. c. 41, § 100, and G. L. c. 41, § 111F, is novel, the applicable principles of the law of arbitration are familiar. We decide that the provisions of § 100 do not preclude submission to arbitration of the question of entitlement to paid leave under § 111F, and that a motion by the city of Lawrence (city) to vacate an arbitration award that conferred paid leave was rightly denied.

General Laws c. 41, § 100, as amended through St. 1970,

c. 27, requires employers of police officers or fire fighters to indemnify them for medical expenses attendant on work-related injury, if the appointing authority determines that it "is appropriate under all the circumstances." Chief among the relevant "circumstances" is whether the medical expenses were, in fact, work related, i.e., causally related to something that happened to the officer or fire fighter on the job.[1] Section 111F provides that a police officer or fire fighter who suffers an incapacitating injury on duty shall receive paid leave for the period of incapacity.

1. *Background facts.* Robert Jackson, a patrolman on the Lawrence police force, suffered a transient ischemic attack (TIA) while on patrol duty on the morning of November 18, 1998. He applied promptly for paid leave on the ground that he had been injured on duty; i.e., he sought § 111F benefits. When Jackson returned to work in the spring of 1999, the city had not yet acted on his application for paid leave. It had received a letter dated May 21, 1999, from Timothy E. Guiney, M.D., one of several physicians who had treated Jackson, saying that the TIA was traceable to an embolus to the brain arising in the heart. That put in play G. L. c. 32, § 94, the so-called "Heart Law."[2]

The city sought an additional opinion from a medical claims administration service, Meditrol, Inc. An officer of Meditrol, whose training was in accounting, reviewed Jackson's medical records. His opinion was that the heart law presumption was not applicable and that Jackson's TIA was the product of a congenital, preexisting condition. Consequently, Meditrol advised, the city was not to reimburse Jackson's medical

---

[1]Paragraph 1 of § 100 provides that the employer shall determine whether the employee's medical expenses were "incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own."

[2]General Laws c. 32, § 94, as appearing in St. 1963, c. 610, provides that "any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a uniformed member of a paid fire department or permanent member of a police department . . . shall, if he successfully passed a physical examination on entry into such service . . . be presumed to have been suffered in the line of duty, unless the contrary be shown by competent evidence." Jackson's physical when he entered the force in 1975 did not turn up evidence of heart disease.

expenses under G. L. c. 41, § 100, or grant him paid leave under G. L. c. 41, § 111F.

2. *The arbitration.* Lawrence Patrolmen's Association (union), as collective bargaining agent for the Lawrence patrolmen, entered into a collective bargaining agreement with the city on behalf of the patrolmen. Article XII of that agreement, devoted to the subjects of "Sick Leave, Injuries, Special Leave and Death Leave," provided in § 4 as to "Injured Leave" as follows:

> "General Laws [c]hapter 41, [s]ection 111F shall be applied in cases of injury. Officers shall have twenty-four (24) hours to report injury in the line of duty."

After progressing through the requisite grievance stages, the union demanded arbitration on the question of paid leave for Jackson. A single arbitrator decided that the § 111F question was a proper subject of arbitration under the agreement, and he awarded Jackson incapacity leave pay from November 18, 1998, to the date Jackson resumed work.[3] The city brought a complaint in Superior Court to vacate the arbitration award on the ground that the arbitrator had exceeded his powers. See G. L. c. 150C, § 11(*a*)(3). A judge of the Superior Court concluded that the arbitrator had acted within his authority and denied the application to vacate the award.[4]

3. *Arbitrability of dispute.* As previously noted, the subject of paid leave on account of injuries was part of the collective bargaining agreement and referred to the substantive rights conferred by G. L. c. 41, § 111F. That statutory provision is among those enumerated in G. L. c. 150E, § 7(*d*), as subordinate to the collective bargaining agreement in the event of conflict between the agreement and the statutory provision. Article XVI of the collective bargaining agreement, pertaining to "Grievance Procedure," provides in § 1 that:

---

[3]That precise date is uncertain on the record.

[4]The parties put the case to the judge on cross motions for judgment on the pleadings. Mass.R.Civ.P. 12(c), 365 Mass. 756 (1974). In their presentation, however, the parties relied on materials outside the pleadings. The judge, therefore, converted the motions to ones for summary judgment. The docket reflects entry of an order allowing the union's motion. There is no docket entry of a final judgment but this does not deter review. See *Lewis* v. *Emerson*, 391 Mass. 517 (1984).

"The term 'grievance' shall be defined as any dispute concerning the interpretation or application of this Agreement."

This is a so-called "broad" arbitration clause that presumptively makes disputes under the agreement a subject of arbitration. *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.,* 363 U.S. 574, 576, 582-583 (1960). *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee,* 430 Mass. 417, 421-422 (1999).[5] Disputes under the agreement are to be arbitrated unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage" (citations omitted). *Id.* at 421.[6] See *Duxbury* v. *Duxbury Permanent Firefighters Assn., Local 2167,* 50 Mass. App. Ct. 461, 464-466 (2000). The provisions of the collective bargaining agreement, compounded with the strong policy favoring arbitration when parties have agreed to it, *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990); *Danvers* v. *Wexler Constr. Co.,* 12 Mass. App. Ct. 160, 163 (1981), put solid ground under the conclusion of the arbitrator and the judge that the question of Patrolman Jackson's entitlement to injured leave pay under § 111F was arbitrable.

Even a broad clause, however, does not make arbitrable questions that a statute or agreement places beyond the authority of arbitrators. See *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976); *Leominster* v. *International Bhd. of Police Officers, Local 338,* 33 Mass. App. Ct. 121, 127-128 (1992). See also the many authorities collected in *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 795 (1977), although in that case the court determined that there was not a statutory prohibition against the subject committed to arbitration.

The city's argument for the proposition that G. L. c. 41,

---

[5]Neither party has furnished us with the entire collective bargaining agreement. Customarily, collective bargaining agreements provide that arbitration follows if a grievance is not resolved. See, e.g., *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee,* 430 Mass. at 418-419. In their briefs the parties take for granted that arbitration is the last step in the grievance process.

[6]Illustrations of broad and narrow arbitration clauses and how their application plays out are discussed in the *Local 1710* opinion, *supra* at 426-429.

§ 100, forbids submitting to arbitration questions arising under G. L. c. 41, § 111F, begins with the observation that § 100 is not among those statutes enumerated in G. L. c. 150E, § 7(*d*), as subordinate to a collective bargaining agreement. Section 100 confers upon the appointing authorities of cities and towns discretion to determine whether an injury is work related and "whether indemnification is 'appropriate under all the circumstances.' " *Packish* v.. *McMurtrie*, 697 F.2d 23, 25 (1st Cir. 1983). Without developing the thought by either authority or analysis, the city proceeds on the assumption that this function of appointing authorities is nondelegable and that entitlement to indemnification for medical expenses may not be submitted to arbitration. We think the question of the nondelegability of matters under § 100 is not free from doubt, but we need not decide it. For purposes of resolving the instant case, we are prepared to assume that a claim under § 100 is immune to arbitration.

A major question in deciding claims under § 100 is whether the injury for which medical expenses are to be reimbursed was work related. The city contends its nonarbitrable decision that Jackson's medical expenses were not work related must, because there is overlapping subject matter, govern a decision whether he is entitled to paid leave under § 111F and, therefore, his § 111F claim is not arbitrable. In the absence of any language so suggesting in either § 100 or § 111F, we do not think that a decision maker under § 100 on medical reimbursement in connection with on-the-job *accidents* (see note 1, *supra*), binds, by some sort of administrative collateral estoppel, the decision maker under § 111F on paid leave for incapacity caused by injury on duty. As in the case of private agreements, we think that limitations on arbitration must be set forth with some clarity. See *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 135 (1988). The two sections of the statute are independent rather than interdependent.

That § 111F issues may be the subject of a collective bargaining agreement is strongly suggested by the inclusion of § 111F among those provisions made subordinate by G. L. c. 150E, § 7(*d*), to a collective bargaining agreement in the event of conflict between the agreement and the statute. See particularly

*Worcester* v. *Borghesi*, 19 Mass. App. Ct. 661, 663-664 (1985), in which the court expressly ruled that a § 111F question was a proper subject of arbitration. Cf. *Willis* v. *Selectmen of Easton*, 405 Mass. 159, 164-165 (1989), in which the arbitrability of § 111F issues is implied. Other cases in which questions under § 111F were submitted to arbitration include *Duxbury* v. *Duxbury Permanent Firefighters Assn., Local 2167, supra*; and *Reading* v. *Reading Patrolmen's Assn., Local 191*, 50 Mass. App. Ct. 468 (2000). Cf. *Howcroft* v. *Peabody*, 51 Mass. App. Ct. 573, 581-582 (2001).

The question of Patrolman Jackson's paid leave claim under § 111F was properly submitted to arbitration. The arbitrator's findings, rulings, and award, in the absence of fraud (never here suggested) are binding. *Lynn* v. *Thompson*, 435 Mass. 54, 61-62 (2001), cert. denied, 534 U.S. 1131 (2002). *Bernard* v. *Hemisphere Hotel Mgmt., Inc.*, 16 Mass. App. Ct. 261, 264 (1983).

As the Superior Court judge correctly declined to vacate the arbitration award, we affirm the judge's order. Pursuant to G. L. c. 150C, § 11(*d*), the judge should have confirmed the award and entered judgment pursuant to it. See G. L. c. 150C, § 13. An order confirming the arbitration award and judgment pursuant thereto shall enter nunc pro tunc as of September 8, 2000, the date of the Superior Court judge's order.

*So ordered.*