RICHARD ZIELINSKI & another[1] *vs.* CONNECTICUT VALLEY
SANITARY WASTE DISPOSAL, INC.[2]

No. 06-P-1138.

Hampden. April 9, 2007. - October 1, 2007.

Present: GELINAS, COHEN, & SIKORA, JJ.

*Practice, Civil,* Appeal, Entry of judgment. *Real Property,* Lease. *Landlord and Tenant,* Termination of lease.

A seven-year delay in the entry of a final judgment pursuant to Mass.R.Civ.P. 58(a) following a Housing Court judge's allowance of the defendant's motion for summary judgment in a civil action did not constitute a waiver of the plaintiffs' right to have such judgment entered or otherwise bar the plaintiffs' appeal, which was filed within the time permitted after such entry of judgment [328-330]; further, neither the contemporaneous filing of the judge's "Rulings and Order" on the motion for summary judgment nor the docket entry indicating the motion's allowance served as a sufficient substitute for the rule's strictly construed "separate document" requirement such as would render the plaintiffs' appeal untimely [330-332].

In an eviction action arising from the breach of a commercial lease's provisions concerning violations of landfill regulations or other similar laws, the judge correctly granted summary judgment in favor of the defendant tenant, where the lease, viewed as a whole, specifically precluded termination for breaches of lease provisions concerning operational matters, such as the breaches at issue. [332-335]

This court declined to consider an issue of nonpayment of rent as grounds for termination of a commercial lease where the issue was neither raised in the plaintiffs' complaint nor presented for adjudication to the trial judge by the parties. [335-336]

CIVIL ACTION commenced in the Hampden Division of the Housing Court Department on April 8, 1997.

The case was heard by *William H. Abrashkin,* J., on a motion for summary judgment on March 11, 1998, and entry of judgment was ordered by him on November 10, 2005.

[1] Martin Zielinski.

[2] Doing business as United Waste Systems, Inc.

*Andrew N. Nathanson* (*Hemanth C. Gundavaram* with him) for the plaintiffs.

*John B. Daukas* (*Ashley H. Gray* with him) for the defendant.

GELINAS, J. We first consider in this case the defendant's argument that the plaintiffs' appeal must be dismissed either because a delay of some seven years in the entry of a judgment pursuant to Mass.R.Civ.P. 58(a), as amended, 371 Mass. 908 (1977), constituted a waiver of the plaintiffs' right to appeal from the allowance of the defendant's motion for summary judgment, or because the filing of the judge's "Rulings and Order" on the motion, and the docket entry indicating that the motion had been allowed, served as a sufficient substitute for the "separate document" requirement of the rule, and thus rendered the plaintiffs' appeal untimely. As we conclude that neither waiver nor substitution should bar the plaintiffs' appeal, we consider the plaintiffs' claims on appeal, and conclude that the defendant is entitled to summary judgment and dismissal of the plaintiffs' claim.

*Background.* The plaintiffs, Richard and Martin Zielinski, filed an eviction action on April 8, 1997, in Housing Court to recover property leased to the defendant, Connecticut Valley Sanitary Waste Disposal, Inc. (Connecticut Valley or the defendant), for use as a landfill. They alleged that the defendant had "knowingly, intentionally and willfully violated numerous provisions of the Lease, . . . including the critical requirement that [the defendant] operate the . . . Landfill in strict compliance with all applicable laws." These violations, they claimed, resulted in a material breach of the lease, causing the lease to terminate and obliging the defendant to vacate the premises and return possession to the plaintiffs. Specifically, the plaintiffs, in their one-count complaint, asked that the court (1) declare that the defendant had materially breached the lease and order that the defendant immediately vacate the premises; and (2) award the Zielinskis their costs, interest, and other appropriate relief. The Zielinskis demanded a jury trial.

The case was filed in the Housing Court; it was later transferred to the Superior Court, with a Housing Court judge specially assigned to hear it. In October, 1997, the defendant moved for summary judgment. On March 11, 1998, the judge allowed the

defendant's motion; the judge's "Rulings and Order on Motion of Defendant . . . for Summary Judgment" was filed with the clerk on that day. The docket of the case reflected the filing of the document and the disposition.[3] However, no separate final judgment, as required by rule 58(a), either issued or was entered on the docket.

Some seven years later, in August, 2005, the plaintiffs filed a motion for entry of judgment. The defendant filed an opposition, and after hearing oral argument, the same judge who had heard and allowed the summary judgment motion ordered that a final judgment be issued.[4] It was entered on the docket on November 10, 2005, and the plaintiffs filed their notice of appeal on November 21, 2005. The defendant filed a motion to dismiss the appeal and was given permission by a single justice of this court to raise the issue in its appellee brief. The defendant did not file a cross appeal.

*Discussion.* 1. *Delay in entry of judgment pursuant to rule 58(a).* We first address the defendant's claim that the appeal should be dismissed, despite the fact that a separate document of judgment as required by rule 58(a) did not enter until 2005, and the plaintiffs' appeal was filed within the time permitted

---

[3]The docket entry, dated March 11, 1998, stated: "Rulings and order on motion of Defendant Conn. Valley Sanitary Waste Disposal, Inc. [f]or Summary Judgment/Allowed."

[4]In allowing the plaintiffs' motion for entry of judgment, the judge noted that "in colloquy on this motion both parties reported that the dispute has, in some form, been the continuing subject of active pursuit by the parties since 1998. The period of time that has passed since the Rulings and Order were entered, although lengthy, is not of Dickensian proportions for an active civil dispute of this complexity." In addition, according to the plaintiffs, they had also filed a number of other actions in Superior Court arising out of the lease. On November 29, 1994, an action was brought against Joseph F. Partyka (then a principal in Connecticut Valley) and others. A judge allowed a motion to compel arbitration of certain counts and stayed the remaining claims. On April 10, 1995, the Zielinskis filed an action against Connecticut Valley. The judge in that suit ordered counts I-V submitted to arbitration and consolidated the remaining claims with other pending cases. While the cases remained outstanding, status reports were filed indicating that the parties were engaged in ongoing global settlement negotiations. After the settlement negotiations proved unavailing, present counsel dismissed those cases and moved for entry of judgment in the present action. See *Connecticut Valley Sanitary Waste Disposal, Inc.* v. *Zielinski,* 436 Mass. 263 (2002).

after such entry of judgment.[5] Relying primarily on *Fiore* v. *Washington County Community Mental Health Center*, 960 F.2d 229, 236 (1st Cir. 1992), construing the cognate Federal Rule 58(a), Connecticut Valley argues that although no final judgment entered until 2005, and although the plaintiffs timely appealed from that entry, the plaintiffs should be deemed to have waived their appeal because they waited over seven years before moving for entry of judgment on a separate document pursuant to rule 58(a).

The *Fiore* court recognized that the separate document requirement "should always be interpreted 'to prevent loss of the right to appeal, not to facilitate loss.' " *Id.* at 237 (citations omitted). Nevertheless, on the theory that a party could always waive technical application of the separate document requirement, the court held that it could infer waiver where a party failed to act within three months of entry of the court's order, absent exceptional circumstances. "When a party allows a case to become dormant for such a prolonged period of time, it is reasonable to presume that it views the case as over. A party wishing to pursue an appeal and awaiting the separate document of judgment from the trial court can, and should, within that period file a motion for entry of judgment. This approach will guard against the loss of review for those actually desiring a timely appeal while preventing resurrection of litigation long treated as dead by the parties." *Id.* at 236.

The waiver doctrine has not been followed by other Federal circuits. See, e.g., *Hammack* v. *Baroid Corp.*, 142 F.3d 266, 268-270 (5th Cir. 1998) (expressly rejecting *Fiore*, and holding that a party's delay in seeking a separate document of judgment cannot constitute waiver of his right to appeal; noting also that, should a court fail to issue a separate document, a party seeking finality remains free to request one). See also *Rubin* v. *Schottenstein, Zox & Dunn*, 110 F.3d 1247, 1253 & n.4 (6th Cir. 1997), vacated on other grounds, 120 F.3d 603, reinstated in

---

[5]Rule 58(a) of the Massachusetts Rules of Civil Procedure provides in relevant part: "Every judgment shall be set forth on a separate document . . . . A judgment is effective only when so set forth or filed and when entered as provided in Rule 79(a)." Rule 79(a), 365 Mass. 840 (1974), provides that the clerk shall make and keep docket entries, and that "[t]he entry of an order or judgment shall show the date the entry is made."

pertinent part, 143 F.3d 263, 270 (6th Cir. 1998) (rejecting *Fiore* doctrine of waiver as not supported by the rules or the statements of the United States Supreme Court on the issue, and applying rule 58[a] "mechanically"). We decline to follow the waiver theory espoused in *Fiore*, and conclude that the plaintiffs' failure to apply to the court for formal entry of a separate document of judgment under rule 58 does not constitute a waiver of their right to have such judgment entered.

Nor does *Lewis* v. *Emerson*, 391 Mass. 517 (1984), provide the defendant with any ground for relief. In *Lewis*, notwithstanding failure to comply with rule 58(a), the appeal was allowed to proceed, where the judge's memorandum contained a separate section entitled "Judgment," which recited, "It is hereby ordered and adjudged . . . ." *Id.* at 519. The *Lewis* court acknowledged that a literal reading of rule 58 supports the view that a separate document entering judgment is required, but determined that in certain cases, the lack of a separate document should not preclude appellate review. Noting that "the purpose of the 'separate document' and docket entry requirements is to clarify the time from which postjudgment action shall be commenced," and that the "rule's aim is to ascertain the exact judgment date, important for purpose of posttrial motions and appeals," *ibid.*, citing Reporters' Notes to Mass.R.Civ.P. 58, Mass. Ann. Laws, Rules of Civil Procedure, at 550 (1982), the court held that "where . . . a 'judgment' is visually distinct from other parts of the document in which it is contained, such that no confusion can exist concerning its import, and the 'judgment' is noted on the court's docket, the requirements of rule 58 (a) will be considered met. Although the better practice calls for the preparation of a separate document of judgment, it is not fair to prevent the parties' exercise of their posttrial and appellate rights on the basis of clerical niceties, for to do so would erode the principle that procedural rules 'be construed to secure the just, speedy, and inexpensive determination of every action.' Mass.R.Civ.P. 1, as appearing in 385 Mass. 1214 (1982). This principle is especially important where the parties have little, if any, control over the manner in which clerks perform their duties." *Lewis* v. *Emerson, supra* at 520.

We have found no Massachusetts case where a court, in departing from the requirement of rule 58(a), has foreclosed an

appellant's right to appeal. Massachusetts courts generally continue to require strict compliance with rule 58(a)'s "separate document" rule. See *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 673 (2003) (entry on the docket of judge's "memorandum and order," where order on last page dismissed the complaint, was insufficient to trigger running of time for filing appeal under *Lewis*; separate entry of judgment five weeks later was the triggering event); *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.*, 15 Mass. App. Ct. 553, 555 (1983) (deeming premature an appeal filed before final judgment had entered). In cases where our courts have held that strict compliance with the "separate document" rule is not required, they have done so in circumstances where an appeal, although technically premature, should be allowed to go forward.[6] See, e.g., *Lewis* v. *Emerson*, 391 Mass. at 520 ("it is not fair to prevent the parties' exercise of . . . appellate rights on the basis of clerical niceties"). See also *Lawrence* v. *Lawrence Patrolmen's Assoc.*, 56 Mass. App. Ct. 704, 706 n.4 (2002) (absence of docket entry of final judgment does not deter appellate review). On the Federal side, any softening of the cognate rule's technical harshness has been in favor of promoting rather than foreclosing the right of appeal. See, e.g., *Bankers Trust Co.* v. *Mallis*, 435 U.S. 381 (1978), cited in *Lewis* v. *Emerson, supra.* We decline to expand the rationale of *Lewis* to preclude an appeal filed in technical compliance with the rules of civil procedure.

Moreover, in this case, the form of the judge's memorandum is not comparable to the document deemed adequate in *Lewis, supra* at 519. Unlike in *Lewis*, where the memorandum contained a separately identifiable "judgment," here, in contrast, there is no " 'judgment' [that] is visually distinct from other parts of the document in which it is contained." *Id.* at 520. And, notwithstanding the title of the judge's memorandum ("Rulings and

---

[6]We note that, as in *Lewis, supra*, concerns regarding the technical imposition of rule 58(a) have generally arisen in the context of an appellant's premature appeal. Problems in such cases arise because an appeal filed prior to entry of a separate judgment may be dismissed for lack of finality in the judgment, thus creating the possibility that the opportunity to appeal from the formal entry of judgment will be foreclosed, if the time for such appeal has expired by the time the dismissal has entered.

*Order . . .*") (emphasis supplied), no part of the memorandum before us is denoted as an "order." Rather, the memorandum simply concludes, "For the foregoing reasons, the motion of the defendant . . . for summary judgment is hereby ALLOWED." We conclude that the judge was correct in entering the final judgment and that the appeal is timely brought.[7]

2. *Merits of the appeal.* On our conclusion that the appeal is timely, we proceed to consider its merits. We recite the facts generally, reserving some specifics for our discussion of the issues. The Zielinskis own approximately 180 acres in Chicopee used as a landfill. In 1983, Antoinette Zielinski, the Zielinskis' mother and predecessor in interest, leased the landfill to Connecticut Valley,[8] with monthly rental payments set at fifty percent of its net income from the landfill. The lease was for an initial five-year term, which Connecticut Valley could renew at its option five times (for a total lease term, assuming exercise of all options, of thirty years). Paragraph 6 of the lease allows the Zielinskis to terminate the lease under certain conditions for nonpayment of rent[9]; par. 21 requires Connecticut Valley to operate the landfill in "strict compliance" with all applicable laws and regulations and to indemnify the Zielinskis for "all claims for damages, on account of injury or damage by way of any act or omission" by the defendant.[10]

---

[7]Nor are we troubled by the fact that the docket entries immediately following that of March 11, 1998, indicate that the plaintiffs were attempting to obtain a transcript of the hearing; to infer from that fact that they in fact had notice of a "judgment" and were preparing an appeal would be speculation.

[8]By 1998, after a series of purchases and mergers, Connecticut Valley was owned by Waste Management, Inc. We refer to the defendant at all times as "Connecticut Valley."

[9]Paragraph 6 provides, in relevant part:

"The annual rental shall be paid on a monthly basis . . . . In the event that [Connecticut Valley] is late more than ninety (90) days in making any monthly payment, then said failure to make payment shall be considered a breach of this Lease and [the Zielinskis] at [their] option may terminate this Lease . . . [but Connecticut Valley] shall have thirty (30) days from date of receipt of notice [of default to cure]. In the event default has not been corrected within said thirty (30) days this Lease shall automatically terminate."

[10]Paragraph 21 provides, in full, that Connecticut Valley

"represents to [the Zielinskis] that it is familiar with the Federal, State

In 1995, various regulatory bodies began investigating the landfill. In 1996, in a surprise inspection, Massachusetts Department of Environmental Protection (DEP) investigators took six samples from landfill material,[11] discovering that two of the six samples contained asbestos that had not been properly treated.[12] The investigators also charged that Connecticut Valley was accepting more tonnage (both daily and annually) than its license allowed. In February, 1997, Connecticut Valley and the DEP entered into a consent order in which the defendant agreed, inter alia, to pay a $150,000 penalty to settle allegations of environmental violations. Among the alleged violations were claims that Connecticut Valley had caused asbestos to be placed illegally in the landfill, and that it had accepted greater quantities of waste material than the amounts for which it had permits. The Zielinskis contend that these acts constituted a material breach of the lease, and that they therefore may terminate the

and Municipal rules, regulations, statutes, codes, ordinances, and all accepted practices relating to the operation of a sanitary landfill and further represents that it will conduct its operation of the said landfill in strict compliance therewith. [Connecticut Valley] further shall indemnify and save harmless [the Zielinskis] against any and all claims for damages, on account of injury or damage by way of any act or omission of [Connecticut Valley] . . . [which also] shall defend and shall assume all costs of defense of any lawsuits or controversies wherein the [Zielinskis are] named a party or in any hearing before any duly constituted body before which the [Zielinskis are] required to appear and/or answer by law. It is understood that costs and damages of said action come from the gross income of [Connecticut Valley] from the sanitary landfill operation, and may [a]ffect the rental income of [the Zielinskis]; the foregoing, however, shall be qualified by the provisions set out in paragraph 24, infra."

Paragraph 24 goes on to provide, in pertinent part, that if the Zielinskis object in writing to Connecticut Valley's failure to obey the relevant laws and regulations, and do so "prior to any intervention or action" by any government agency, "then any fines or penalties imposed by any duly constituted body resulting from the action or inaction . . . shall be the responsibility of [Connecticut Valley] . . . and shall not be deemed a legitimate deduction from revenues in arriving at 'net income.' "

[11]The samples were taken from perhaps as much as 7,000 tons of material dumped over a two-month period in 1996.

[12]At the time, the landfill was licensed to accept asbestos and did legally accept such disposal. But the asbestos in this instance was mixed in with shredded demolition material and was used as cover fill rather than being properly prepared by bagging, marking, mapping, and so on.

lease, oust the defendant from possession, and take over the landfill's operation. As far as the record shows, Connecticut Valley complied with the consent order in all respects, and has been in compliance with the order and the lease in this regard since that time.

We conclude that the motion judge was correct in granting summary judgment to the defendant. "Summary judgment is appropriate where there is no genuine issue of material fact, and when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Gray* v. *Giroux,* 49 Mass. App. Ct. 436, 438 (2000). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in [rule] 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991). Our review is de novo, see *Matthews* v. *Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 123 n.1 (1997); we consider the record and the legal principles involved without deference to the motion judge's reasoning. See *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.,* 64 Mass. App. Ct. 347, 357 n.9 (2005).

a. *Breach of par. 21 of the lease.* Upon our review of the summary judgment materials here, we conclude, as did the motion judge, that the lease did not allow termination for breach of par. 21 (violation of landfill regulations or other similar laws). The only remedy specified in the relevant lease paragraphs (21 and 24) is indemnification. By contrast, par. 6 of the lease specifically provides that the lease may be terminated for nonpayment of rent. Failure to include a termination remedy in par. 21 was therefore, as concluded by the motion judge, intentional. See *Judkins* v. *Charette,* 255 Mass. 76, 82 (1926) ("right to reenter being restricted to a breach of specific covenants of the lease, impliedly excludes the right of the lessor to re-enter for a breach of other covenants"). Cf. *Chatham Pharmaceuticals, Inc.* v. *Angier Chem. Co.,* 347 Mass. 208, 211 (1964) ("when there is an omission of any provision for one party to assign

obligations and in the same sentence there is a provision that in certain circumstances the other party may assign rights or obligations, we conclude that the omission was intentional").

We reject the Zielinskis' assertion that because par. 21 does not specifically prohibit termination, termination is in fact an available remedy for breach of that paragraph. Their reliance on *DiBella* v. *Fiumara*, 63 Mass. App. Ct. 640 (2005), is misplaced. While that decision does note that a lease may be terminated for material breach if it contains no default clause, see *id.* at 643-644, the lease at issue here does contain several default clauses. See, e.g., note 9, *supra*. We agree with the motion judge's construction of the lease that, viewing the lease as a whole, it specifically precludes termination for breaches of lease provisions concerning operational matters, the breaches at issue here. See *id.* at 645, citing Restatement (Second) of Property (Landlord & Tenant) § 13.1 comment j (1977) ("parties can agree that landlord's remedies for a breach by the tenant will be greater or less than what the remedies would be in the absence of such agreement").

b. *Breach of par. 6 of the lease.* Finally, the Zielinskis argue that, as termination for nonpayment of rent is a remedy made available under par. 6 of the lease, remand is required to determine whether Connecticut Valley's alleged diversion of profits constitutes nonpayment of rent.[13] This claim was not part of the plaintiffs' second amended complaint (nor of either of their prior complaints), and the argument was not made below, apparently because the matter whether there was an attempt to avoid rental payments had been submitted to arbitration.[14] We decline to consider the question. The issue, not having been raised in the

---

[13]As described by the motion judge, the allegation was that Connecticut Valley

> "has deprived [the plaintiffs] of revenues to which they are entitled by granting below-market rates to its own subsidiaries in order to divert landfill profits. . . . [Since], under the lease, the rent is fifty percent of the net income of the landfill . . . [b]y allowing its subsidiaries to dump at below-market rates, the allegation runs, [Connecticut Valley] has artificially depressed its income, with a corresponding reduction in its rental obligation."

[14]The motion judge did review at least some material relevant to the Zielin-

plaintiffs' complaint nor presented for adjudication to the judge by the parties, will be deemed waived. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 674 (2000) ("claims — however meritorious — that have not been raised in the trial court are deemed to have been waived on appeal").

*Judgment affirmed.*

---

skis' claim that the defendant was attempting to evade payment of the full amount of the rent, but only in the context of the Zielinskis' argument that, in attempting to reduce the amount of rent, the defendant had in some way committed waste upon the property, thus entitling the plaintiffs to possession pursuant to G. L. c. 242, § 1. The judge rejected this claim for waste, noting that the plaintiffs had failed to cite any authority "suggesting that a reduction in business profits, even if deliberately engineered to the detriment of another party, can support a claim for waste to real property . . . ." The plaintiffs have not appealed from this ruling, instead advancing their new argument as to the violation of par. 6 of the lease.