NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1199

THE NORFOLK & DEDHAM GROUP

vs.

TOWN OF FALMOUTH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, the Norfolk & Dedham Group, appeals from a Superior Court summary judgment in favor of the defendant, the town of Falmouth (town).  The plaintiff argues that genuine disputes of material fact remain as to whether the town was the original cause of a water leak in the home of the plaintiff's insured, and therefore the judge erred in ruling that the town was immune pursuant to the Massachusetts Tort Claims Act (MTCA), G. L. c. 258, § 10 (j).  Specifically, the plaintiff contends that the town was negligent in installing a compression fitting on piping leading to a water meter, failing to inspect and maintain it, and failing to respond promptly to the report of the leak.  We affirm, concluding that, based on the summary

judgment record, the plaintiff has no reasonable expectation of proving that the town was the original cause of the water leak.

Background.  We set forth the facts in the light most favorable to the plaintiff, the nonmoving party.  See Klevan v. Newton, 97 Mass. App. Ct. 87, 88 n.2 (2020).

The plaintiff provides homeowner's insurance to William Dowling, Jr. (insured), who owns a home in the town.  Under the policy, the plaintiff is subrogated to the rights of the insured for damage sustained to the home as the result of the water leak.

The home was built between 2004 and 2005 by its former owner (builder).  In January 2005, the town provided the home with a water meter, which the town owns.  Around that time, the water meter and the piping leading to it, including the compression fitting, were installed.  As discussed below, the parties dispute whether the compression fitting was installed by a town employee or by a plumber working for the builder.  Within months of its installation, the original water meter froze and cracked, and in May 2005 a replacement water meter was screwed in place by a town employee.

In 2008, the insured and his wife bought the home.  Shortly afterwards, an employee of the town's assessor's office walked through the home, but from then until 2018, no town employee

2

accessed the mechanical room in the basement where the water meter is located.

At about 5 A.M. on July 14, 2018, the compression fitting on piping leading to the water meter failed. A heavy flow of water sprayed from the area of the compression fitting. The basement flooded with water three or four inches deep. The insured discovered the flood, and a sliding glass door was opened; the water subsided to about two inches deep. The insured called 911, and a few minutes later firefighters arrived. They asked where the water shutoff valve was, and the insured replied that he did not know. Unable to find the valve, the firefighters contacted the town's water department.

An employee of the water department, Joseph P. Gomes, responded to the home. Gomes checked the town's database for the location of the home's water shutoff valve at the curb but found no record of it. Gomes telephoned his supervisor, who informed him that the builder did not provide the town with a record of the location of the curb shutoff valve. Using a metal detector, Gomes tried unsuccessfully to find the curb shutoff valve.[1] Gomes decided to shut off the main valve that supplied water to the entire street. When Gomes accessed the main valve,

_____

[1] It was later determined that the curb shutoff valve was located in front of the house next door.

3

it was clogged with debris; he tried unsuccessfully to clear the clog with a hand tool.  Gomes went to the water department, retrieved an air compressor, and used it to remove the debris.  From the time that Gomes was notified about the break until he shut off the water, about ninety minutes had elapsed.

The plaintiff commenced this action, alleging in its second amended complaint claims against the town for breach of contract, breach of warranties, strict liability, and negligence.[2]  The town moved for summary judgment, asserting that it is immune from suit under G. L. c. 258, § 10 (j), because it did not install or maintain the equipment that failed and caused the flood, and its employee timely shut off the water to the house.  After a hearing, a judge initially denied the motion, ruling that there remained genuine issues of material fact including whether the town "was operating in a commercial capacity" and "owed a duty to the plaintiff."  The town moved for reconsideration, and the judge allowed summary judgment, citing Magliacane v. Gardner, 483 Mass. 842, 844 (2020), and

---

[2] In addition, a prior version of the complaint alleged claims against GP Contracting, Inc., and the second amended complaint alleged claims against Quality Mechanical Systems, LLC.  Those parties were dismissed.  The complaint also alleged claims against the town's water department, which were dismissed as subsumed in the claims against the town.  None of those claims are before us.

4

ruling that the town was immune from liability under the MTCA. Judgment entered for the town, and this appeal ensued.

Discussion. In reviewing the grant of summary judgment, we consider the facts in the light most favorable to the plaintiff, the nonmoving party. See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); Klevan, 97 Mass. App. Ct. at 88 n.2. Because the plaintiff has the burden of proof at trial, the town "is entitled to summary judgment if [it] demonstrates, by reference to material described in [rule] 56 (c), unmet by countervailing materials, that the [plaintiff] has no reasonable expectation of proving an essential element of [the plaintiff]'s case." Zielinski v. Connecticut Valley Sanitary Waste Disposal, Inc., 70 Mass. App. Ct. 326, 334 (2007), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Our review is de novo, without deference to the motion judge's reasoning. See Zielinski, supra.

Under the MTCA, public employers are liable for negligence of their employees, G. L. c. 258, § 2, subject to certain exceptions enumerated in § 10. Apart from those exceptions, the MTCA "covers all claims brought against a city, even those arising from the city's sale of water to its residents." Magliacane, 483 Mass. at 844. The exception at issue here is set forth in § 10 (j), which provides that a public employer is not liable for "any claim based on an act or failure to act to

5

prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer or any other person acting on behalf of the public employer."[3]  On this record, the application of § 10 (j) is a question of law.  See Klevan, 97 Mass. App. Ct. at 90 n.8.

The plaintiff argues that there are genuine disputes of material fact as to whether the town's conduct was the original cause of the water damage, such that the town is not subject to the exceptions in § 10 (j).  See Magliacane, 483 Mass. at 859 (city not entitled to § 10 [j] immunity for supplying water so low in alkalinity that it corroded water heaters).  For the plaintiff to establish that the town was the original cause of the flood requires a "rigorous causation analysis, focused on the cause of the actual harmful 'condition' that is alleged." Klevan, 97 Mass. App. Ct. at 94.  The plaintiff contends that it presented sufficient evidence to raise a genuine issue of material fact on three aspects of the town's alleged conduct: (1) improper installation of the compression fitting, (2)

_____

[3] The plaintiff relies on many cases that predate the 1978 enactment of the MTCA, G. L. c. 258, § 10, added by St. 1978, c. 512, § 15, and its 1993 amendment to add § 10 (j), added by St. 1993, c. 495, § 5.  See, e.g., Reil v. Lowell Gas Co., 353 Mass. 120, 130 (1967) (gas company liable for failure of service pipe not owned by it).  Because the MTCA reflected a "legislative intent to repeal the common-law patchwork of exceptions," Magliacane, 483 Mass. at 850, cases that predate it are inapposite.

failure to maintain it, and (3) delay in shutting off the water. We address each in turn.

1.  Improper installation of compression fitting.  The plaintiff argues that the town is not entitled to immunity under G. L. c. 258, § 10 (j), because its employee improperly installed the compression fitting, and thus the town was the "original cause" of the condition that led to the flood and is liable to the insured for breach of contract and negligence. See Magliacane, 483 Mass. at 858-859; Klevan, 97 Mass. App. Ct. at 90-91.  In its complaint, the plaintiff alleged that the town provided and maintained water service and "the equipment necessary thereto," and its negligence caused water damage "due to a piping malfunction."

With its motion for summary judgment, the town presented the deposition testimony of Cathal O'Brien, superintendent of the town's water department.  O'Brien testified that in January 2005, the town issued a permit to install the water meter, which was signed by the builder and approved by the town.  O'Brien explained that the notation "10/29/04 will send plumber so mtr can be installed" on the permit meant that the water meter would be delivered to the builder's plumbing contractor who would install it.[4]  Also in the summary judgment record are two

_____

[4] O'Brien also testified that the town's plumbing inspector would inspect the installation.  The plaintiff does not argue

specification diagrams from the town's utilities division, one captioned "METER INSTALLATION DETAIL" and the other "2 [inch] METER PIT INSTALLATION." Both diagrams contained a notation that certain items depicted are "FURNISHED BY WATER DEPT. INSTALLED BY CONTRACTOR." O'Brien testified that the town water department did not install the water meter, the piping leading to it, or the compression fitting on the piping because its employees are not licensed plumbers. O'Brien also testified that the expected life span of the compression fitting would be twenty years, and its failure after thirteen years was most likely the result of work on the plumbing system or a change in water pressure.

In opposition to summary judgment, the plaintiff submitted an affidavit of its expert mechanical engineer, Curt M. Freedman, averring that "there was no permit taken out" to install the water meter, and therefore it must have been installed by the town rather than a private plumbing contractor. Freedman's affidavit related that the plumber who replaced the pipe fitting, Michael Golden, stated that "it was his finding that the subject piping fitting installed near the water meter

that the town's plumbing inspector was negligent in inspecting the installation of the water meter in 2005, and so we do not consider that issue.

8

failed as a result of improper installation."[5]  Freedman also opined that the flood was caused by the town's improper installation of the compression fitting.

From the summary judgment record before us, we conclude that the plaintiff did not establish that it had a reasonable expectation of proving at trial that the town installed the compression fitting in 2005, or that it did so improperly.  See Zielinski, 70 Mass. App. Ct. at 334.  Freedman's affidavit averring that the town "likely installed" the compression fitting, did not overcome the town's assertions that it did not do so, based on evidence including O'Brien's deposition testimony, the water meter permit, and the notations on the utilities division diagrams that certain items were supplied by the town but installed by the contractor.  Indeed, the premise of Freedman's opinion -- that "there was no permit taken out" to install the water meter -- is refuted by the summary judgment record.  As O'Brien testified, the town's approval of the builder's application for new water and sewer service "is the permit," i.e., "[t]he permit is the signed application."  The plaintiff presented no affidavit of anyone with personal

_____

[5] At his deposition, the insured testified that at about 7:30 A.M. on the day of the flood, he telephoned the builder, who had been his friend since high school and who sent the plumber to the home who repaired the leak.

9

knowledge of the installation of the compression fitting -- such as the builder who signed the water meter permit -- to countervail the town's assertions that it did not install the compression fitting and that its employees were not licensed or qualified to do so. Freedman's affidavit opining that the town "likely" installed the compression fitting is insufficient to defeat summary judgment. "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment" (citation omitted). Madsen v. Erwin, 395 Mass. 715, 721 (1985). See Cottrell v. Laidley, 103 Mass. App. Ct. 483, 494 (2023) (doctor's affidavit stating nonmedical opinion that plaintiff's snoring "should have been apparent" to employer did not defeat summary judgment).

As for the averments in Freedman's affidavit that the compression fitting failed as a result of improper installation, those were not based on Freedman's personal knowledge as required by Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974), but instead on hearsay statements of Golden which "must be disregarded in passing on the motion for summary judgment." Ortiz v. Morris, 97 Mass. App. Ct. 358, 362 (2020).[6]

---

[6] Without deciding the issue, we note that the town argues that the installation of the compression fitting in 2005 was too remote in time to be the cause of the leak thirteen years later in 2018. See Kent v. Commonwealth, 437 Mass. 312, 319-320

10

2.  Failure to periodically inspect compression fitting.

The plaintiff argues that the town failed to perform inspections

of water lines and components as mandated by a town ordinance,

and that violation was presumptive evidence of negligence.  See

Klevan, 97 Mass. App. Ct. at 92 n.9 (immunity under § 10 [j]

does not apply to negligent maintenance by town).

The summary judgment record establishes that, after its

installation in 2005, no town employee entered the home to

service the water meter.  O'Brien testified that town employees

do not enter customers' homes to read water meters; instead,

meters are read by radio signals.[7]

In opposition to summary judgment, the plaintiff relied on

Freedman's affidavit averring that "emergency ordinance section

223 . . . mandates semiannual inspections at the very area that

failed."  That section of the town's water bylaw, chapter 223 of

the town's code, contains § 233-18, which requires semiannual

---

(2002) (release of parolee too remote to be original cause of
murder eight years later).  See also Klevan, 97 Mass. App. Ct.
at 92 (city's design of sewer system not "affirmative act" that
caused sewage backup, where "the sewer system had operated as
designed for decades, without incident").

[7] The record before us contains no information about any
ordinance authorizing town employees to access water meters, as
was common before technological advances permitted meters to be
read remotely.  See, e.g., Cohen v. Board of Water Comm'rs, Fire
Dist. No. 1, S. Hadley, 411 Mass. 744, 749 (1992) (construing
town ordinance that required property owner to keep water meter
accessible for reading and servicing).

inspections of "backflow prevention devices" that prevent contaminated water from infiltrating potable water. The record before us contains no information that the compression fitting was a backflow prevention device, or that any contaminated water infiltrated potable water. The plaintiff did not defeat summary judgment merely by presenting Freedman's unsupported assertion that "the very area that failed" was the same equipment as to which the ordinance pertained. See Ortiz, 97 Mass. App. Ct. at 362. And in any event, even assuming that the ordinance applied in these circumstances, the town is immune under § 10 (j) for failure to inspect the water meter where the plaintiff has no reasonable expectation of proving that the town was the original cause of any improper installation, as discussed above. See Klevan, 97 Mass. App. Ct. at 92 n.9.

3. Delay in turning off water. Finally, the plaintiff contends that the town negligently delayed turning off the water, causing additional damage.

In support of its motion for summary judgment, the town presented O'Brien's deposition testimony opining that Gomes's ninety-minute response time was reasonable based on a Department of Transportation standard. The plaintiff argues that a delay of ninety minutes was negligent. We conclude that the plaintiff has no reasonable expectation of proving that the ninety-minute interval that elapsed from the time that Gomes was notified

12

until the water was turned off materially contributed to the water damage condition. See Cormier v. Lynn, 479 Mass. 35, 40 (2018) (public employer's failure to act to prevent harm caused by third party not original cause of injury). It is undisputed that, once the insured discovered the water leak and opened the sliding glass door, the water level dropped to two inches and never increased. Furthermore, the difficulties that Gomes experienced while responding to the flood -- including looking for the curb shutoff valve and clearing debris from the main shutoff valve -- were not the original cause of the flood. "[T]he principal purpose of § 10 (j) is to preclude liability for failures to prevent or diminish harm." Brum v. Dartmouth, 428 Mass. 684, 696 (1999). See also Klevan, 97 Mass. App. Ct. at 91.[8]

Judgment affirmed.

By the Court (Shin, Grant & Smyth, JJ.[9]),

Clerk

Entered: October 4, 2024.

---

[8] The town is entitled to the costs of the appeal in the ordinary course. See Mass. R. A. P. 26 (a), as appearing in 481 Mass. 1655 (2019).

[9] The panelists are listed in order of seniority.